IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| ARLYN RICE SIBILLE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO.  3:13-CV-566-WKW |
| | ) | [WO] |
| T. K. DAVIS, III, PATRICIA Y. | ) | |
| DAVIS, and MY HEIDI, LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| T.K. DAVIS III, PATRICIA Y. | ) | |
| DAVIS, CENTURY PARK, LLC, | ) | |
| DONALD H. ALLEN, and | ) | |
| WARREN A. STILES, MD, | ) | |
| | ) | |
| Counterclaim Plaintiffs, | ) | |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ARLYN RICE SIBILLE, | ) | |
| | ) | |
| Counterclaim Defendant. | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Plaintiff Arlyn Rice Sibille brings this action under the Alabama Uniform Fraudulent Transfer Act, Alabama Code §§ 8-9A-1, *et seq*., and also is defending counterclaims.  Before the court is Ms. Sibille's motion for summary judgment (Doc. # 70) on the counterclaims on grounds of collateral estoppel.  The Counterclaim Plaintiffs – T. K. Davis III, Patricia Y. Davis, Century Park, LLC,

Donald H. Allen, and Warren A. Stiles – filed a response in opposition.  (Doc. # 78.)  After careful consideration of the arguments of counsel, the relevant law, and the evidentiary submissions, the court finds that the motion for summary judgment is due to be granted on the counterclaims of all Defendants, with the exception of Patricia Y. Davis.

## I.  JURISDICTION AND VENUE

The court exercises subject-matter jurisdiction pursuant to 28 U.S.C. § 1332(a).  Personal jurisdiction and venue are uncontested.

## II.  STANDARD OF REVIEW

To succeed on summary judgment, the movant must demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The court must view the evidence and the inferences from that evidence in the light most favorable to the nonmovant. *Jean-Baptiste v. Gutierrez*, 627 F.3d 816, 820 (11th Cir. 2010).

The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  This responsibility includes identifying the portions of the record illustrating the absence of a genuine dispute of material fact.  *Id.*; Fed. R. Civ. P. 56(c)(1)(A).  Or, the movant can assert, without citing the record, that the nonmoving party "cannot produce admissible

evidence to support" a material fact.  Fed. R. Civ. P. 56(c)(1)(B).  If the movant meets its burden, the burden shifts to the nonmoving party to establish – with evidence beyond the pleadings – that a genuine dispute material to each of its claims for relief exists.  *Celotex*, 477 U.S. at 324.  A genuine dispute of material fact exists when the nonmoving party produces evidence allowing a reasonable fact finder to return a verdict in its favor.  *Waddell v. Valley Forge Dental Assocs*., 276 F.3d 1275, 1279 (11th Cir. 2001).

## III.  BACKGROUND

The sole question raised by the summary judgment motion is whether a judgment rendered in the Circuit Court of Lee County, Alabama, has collateral estoppel effect on the issue of whether Ms. Sibille's signature on a warranty deed is a forgery, an issue that undisputedly is material to the counterclaims in this case. Resolution of the question of collateral estoppel's effect necessitates a comparison between the state court proceedings and this litigation.

**A.**     **The Prior State Court Proceedings**

On July 15, 2011, Ms. Sibille brought a breach-of-contract action in the Circuit Court of Lee County, Alabama (the "State Court Action"), against Century Park and three of its members, Mr. Davis, Mr. Allen, and Dr. Stiles.   The controversy arose out of Century Park and its members' purchase of 145 acres in Lee County from Ms. Sibille and her brother, John Rice, in 2001.  Ms. Sibille

allegedly conveyed by warranty deed her 25% interest in the 145 acres to Century Park in exchange for a promissory note in the amount of $500,000, plus interest. (*See* Promissory Note, at 1 (Doc. # 73) (providing that "for value received, the undersigned promise to pay to the order of Arlyn Rice Sibille . . . the principal sum of . . . $500,000," plus interest (emphasis omitted)). Century Park's members, who included Mr. Davis, Mr. Allen, and Dr. Stiles, allegedly signed a guarantee for the note thereby personally guaranteeing the payment of all amounts due under the note. Mr. Davis's spouse, Patricia Y. Davis, who is a party in this case, was not involved in the 2001 transaction.

The promissory note, which was dated January 18, 2001, was due and payable after ten years. At the note's maturity, a principal balance of $300,000, plus interest, remained. In the State Court Action, Ms. Sibille brought breach-of-contract claims, alleging that the defendants had defaulted on the promissory note and guarantee by failing to pay the balance of the note at maturity. *See generally Merchants Bank v. Head*, ___ So. 3d ___, 2014 WL 2242474, at *3 (Ala. 2014) ("A promissory note is a form of contract; therefore, it must be construed under general contract principles." (citation and internal quotation marks omitted)).

The defendants collectively filed an answer in the State Court Action and raised affirmative defenses, including failure of consideration. Subsequently, Mr. Davis amended his answer individually to add additional affirmative defenses,

including fraudulent inducement. No defendant pleaded forgery as an affirmative defense.

Ms. Sibille moved for summary judgment on her breach-of-contract claims. (*See* Sibille's Mot. Summ. J. (Doc. # 78).) The defendants responded and, for the first time, disputed the authenticity of Ms. Sibille's signature on the warranty deed. (Davis & Century Park's Resp. to Summ. J. Mot. (Doc. # 72-1), at 4 n.4 (noting the "apparent lack of an authentic signature of Sibille on the Warranty Deed")[1]; at 6 ("It is abundantly clear from a cursory examination of the Warranty Deed and the Affidavit of Sibille attached to her Complaint, that Sibille's signature on the Warranty Deed is not Authentic."); at 10 ("The Warranty Deed purporting to transfer that interest, on its face, appears to be a forgery."); *see also* Davis & Century Park's Resp. to Renewed Summ. J. Mot., at 4 (Doc. # 72-3) ("Sibille's signature on the Warranty Deed is an obvious forgery."); at 5 ("A cursory examination of the signatures reveals that Sibille's signature on the Warranty Deed is a forgery.").) To combat the contention of the defendants, Ms. Sibille submitted her own affidavit, attesting that the signature on the warranty deed was hers. (Sibille's Aff. ¶ 4 (Doc. # 72-4).) The parties have not submitted any document evidencing the circuit court's written or oral ruling on Ms. Sibille's summary

---

[1] Mr. Allen and Dr. Stiles adopted Mr. Davis and Century Park's arguments on summary judgment. (*See* Allen & Stiles's Resp. to Pl.'s Summ. J. Mot. (Doc. # 72-2).)

judgment motions; however, the fact that the case proceeded to trial necessarily reflects the denial of Ms. Sibille's summary judgment motions.

The circuit court presided over a bench trial for two days in October 2013. At the beginning of the trial, Ms. Sibille's counsel moved *in limine* to exclude any evidence that Ms. Sibille's signature on the warranty deed is a forgery on grounds of statute of limitations, latches, estoppel, and lack of standing.  Defense counsel responded that the defendants had raised the issue of the forged deed in the responses to the summary judgment motions, and he (counsel) summarized the pretrial arguments.  He argued further that the signature on the warranty deed was "blatantly dissimilar" to the signatures of Ms. Sibille on other documents, such as on a subordination agreement and affidavits Ms. Sibille signed and submitted during the course of the litigation.  (Trial Tr., at 9–14.)  The circuit court denied the motion *in limine*, but granted leave to Ms. Sibille's counsel to make objections contemporaneously with the offering of the disputed evidence.  During the bench trial, Ms. Sibille's counsel made objections, primarily with respect to the form of questioning about the allegedly forged deed; some of the objections were sustained, and others were overruled.[2]  (*See, e.g.*, Trial Tr., at 63, 68, 71, 77–81, 209.)

---

[2] At trial, the defendants contended both that they did not sign a guarantee with Ms. Sibille to personally guarantee the promissory note and that Ms. Sibille's signature on the warranty deed was forged.

Ms. Sibille did not attend the trial and, thus, was not questioned about the authenticity of her signature on the warranty deed.[3]  But the defendants offered multiple documents purportedly containing Ms. Sibille's signature for comparison purposes.  (Trial Tr., at 129–30, 203, 207.)  Those documents included a certified copy of the warranty deed, affidavits, and a subordination agreement.  (Trial Tr., at 68, 76–79, 184.)  The circuit court admitted them, but with the caveat that *at that time*, the documents were received, not as proof that the signatures were Ms. Sibille's, but only as proof that the documents contained a notarized signature purporting to be Ms. Sibille's.  (Trial Tr., at 78–80, 184.)   Additionally, Ms. Sibille's mother testified at trial.   Ms. Sibille's mother, who had notarized her daughter's signature on the subordination agreement, equivocated as to whether she independently could identify her daughter's signature.  (Trial Tr., at 204, 206, 210–12, 222.)

On November 1, 2013, the circuit court entered judgment in Ms. Sibille's favor upon the promissory note and guarantee, but the judgment does not encompass findings of fact and conclusions of law.  (*See* Judgment (Ex. 4 to Doc. # 78) ("Upon consideration of the evidence presented, the Court finds that the Defendants are liable to Plaintiff pursuant to the subject Promissory Note and

---

[3] The circuit court admitted Ms. Sibille's deposition testimony.  It is noted, though, that in the action pending before this court, Mr. Allen attests that, while he became "suspicious that the [warranty] deed was forged" prior to the trial in the State Court Action, by that point Ms. Sibille already had been deposed.  (Allen's Aff. (Ex. to Doc. # 78).)

Guaranty.").)   Judgment was entered in the amount of $300,000 in principal and $69,000 in interest, and later was amended to include an award of attorney's fees and costs.

On November 27, 2013, the defendants filed a motion for new trial.   They urged a new trial on grounds that there was "new evidence" concerning the forgery of the warranty deed, that by forging the warranty deed, Ms. Sibille "obtained the judgment through fraud, including fraud on the court," and that the forged warranty deed could not supply consideration for the contracts.   (Defs.' Mot. for New Trial (Doc. # 72-8).)   The defendants further informed the circuit court that they had obtained the services of a handwriting expert to opine on whether Ms. Sibille's signature on the warranty deed was a forgery.   They requested the circuit court to reopen the judgment, conduct an evidentiary hearing, and render new findings of fact concerning the possible forgery and fraud.   The circuit court denied the motion without reasoning in an Order entered on January 2, 2014.

The defendants appealed the judgment.   On November 14, 2014, the Alabama Supreme Court affirmed the judgment with no opinion.   (*See* Ex. A to Doc. # 80.)

## B.   <u>This Litigation</u>

On August 8, 2013, during the pendency of the State Court Action, Ms. Sibille filed this lawsuit in diversity against Mr. Davis and his wife, Patricia Y.

Davis, pursuant to the Alabama Fraudulent Transfer Act, Alabama Code §§ 8-9A-1, *et seq.* In the Complaint's first rendition, Ms. Sibille alleged that Mr. Davis, by warranty deed recorded on September 27, 2011, had conveyed an undivided one-half interest in one of his real property assets to his wife, Mrs. Davis, as tenants in common. Ms. Sibille contended that Mr. Davis fraudulently conveyed his interest in the property, valued at more than $100,000, to avoid collection on any judgment entered in the State Court Action. Ms. Sibille asked this court to set aside the allegedly fraudulent conveyance.

Since the filing of the Complaint, the claims and parties have expanded as revealed by the governing Second Amended Complaint and the counterclaims.[4] In the Second Amended Complaint, Ms. Sibille reasserts her fraudulent-conveyance claims against Mr. and Mrs. Davis and adds My Heidi, LLC, as an additional defendant. Ms. Sibille alleges that on August 19, 2011 (which was during the pendency of the State Court Action), Mr. Davis created My Heidi, LLC, with one-half of the voting power assigned to his wife, and between September 26, 2011, and October 12, 2012, transferred five parcels of property, collectively valued at more than $1.6 million, to My Heidi, LLC. Ms. Sibille contends that these conveyances to My Heidi, LLC, also were made with the "intent to hinder, delay,

---

[4] The parties refiled their pleadings in response to the court's Order dismissing the indecipherable pleadings and permitting filings anew. In defense counsel's words, the court gave the parties a "mulligan" by permitting them to replead. (Doc. # 77, at ¶ 9.)

or defraud [Ms. Sibille] in her efforts to collect on [the] promissory note and subsequent judgment" in the State Court Action.  (2d Am. Compl., at ¶ 41 (Doc. # 55).)   Ms. Sibille asks the court to set aside Mr. Davis's conveyances and assignments to Mrs. Davis and My Heidi, LLC.

On August 4, 2014, Defendants filed an answer, denying liability and asserting that "due to the apparent forgery of Sibille's signature on the warranty deed in favor of Century Park, Defendants deny that Century Park conveyed title or clear title to the developed parcels to third-parties."  (Answer to 2d Am. Compl., at ¶ 13.)   Mr. Davis and Mrs. Davis, but not My Heidi LLC, also filed counterclaims and joined three additional Counterclaim Plaintiffs:  Century Park, LLC; Mr. Allen; and Dr. Stiles.   Accordingly, there are five Counterclaim Plaintiffs.

The counterclaims arise from averments that Ms. Sibille's signature on the warranty deed is a forgery.  Counterclaim Plaintiffs allege that, on the day of the closing, Ms. Sibille, an out-of-state resident, was not present in the State of Alabama and that Ms. Sibille's brother had a third party sign Ms. Sibille's name on the warranty deed.   Her brother then allegedly presented Ms. Sibille's forged signature to the bank's notary public, who notarized Ms. Sibille's purported signature on the warranty deed.  (Counterclaim, at ¶¶ 22–24.)   They contend further that, because the warranty deed was forged, it is void, and that, therefore,

there was not a lawful transfer of the 145 acres, and the promissory note "was not supported by any legal consideration." (Counterclaim, at ¶ 25.)

Based upon these facts, the first counterclaim alleges that Ms. Sibille tortiously interfered with the Counterclaim Plaintiffs' contractual and business relations with third parties "by obtaining and/or attempting to collect on a Judgment that was obtained through fraudulent means." (Counterclaim, at ¶ 38.) The second counterclaim avers that Ms. Sibille has abused the process of the court by bringing this lawsuit "with full knowledge that she forged the deed that was the basis of the State Court Action." (Counterclaim, at ¶ 43.) Counterclaim Plaintiffs further allege that "[a]n actual dispute and controversy has arisen between [Ms.] Sibille and Counterclaim Plaintiffs regarding whether the Deed conveyed by [Ms.] Sibille to Century Park was forged and, if so, the legal consequences thereof." (Counterclaim, at ¶ 48.) Counterclaim Plaintiffs request a declaratory judgment that the warranty deed "purportedly conveyed by [Ms.] Sibille to Century Park on or about January 18, 2001, was a forgery." (Counterclaim, at 17.)

Ms. Sibille filed an answer to the counterclaims, denying the allegations of liability, and raising affirmative defenses, including collateral estoppel. At the same time, Ms. Sibille filed a motion for summary judgment on grounds of collateral estoppel. She contends that the counterclaims "rely exclusively on an allegation that the Warranty Deed conveying the property at the root of this action

was forged," but that the circuit court in the State Court Action decided this issue of the alleged forgery in her favor.  Accordingly, Ms. Sibille contends that the doctrine of collateral estoppel bars Counterclaim Plaintiffs from relitigating the issue of whether the warranty deed was forged and that summary judgment is due to be entered in her favor on the counterclaims.

## IV.  DISCUSSION

Alabama law governs for purposes of the collateral estoppel analysis.  *See Cmty. State Bank v. Strong*, 651 F.3d 1241, 1263 (11th Cir. 2011) ("In considering whether to give preclusive effect to state-court judgments under res judicata or collateral estoppel, the federal court applies the rendering state's law of preclusion.").  Collateral estoppel, also known as issue preclusion, "is an equitable defense that bars a party from relitigating an issue that has been resolved in an earlier case." *Bonner v. Lyons, Pipes & Cook, P.C.*, 26 So. 3d 1115, 1121 (Ala. 2009).  Under Alabama law, collateral estoppel has four elements:  (1) The issue in the prior case is identical to the issue in the present case; (2) a court of competent jurisdiction actually litigated the issue in the prior action; (3) resolution of that issue was necessary to the prior judgment; and (4) the same parties or their respective privies are involved in the two actions.  *See Lloyd Noland Found., Inc. v. HealthSouth Corp.*, 979 So. 2d 784, 795–96 (Ala. 2007); *Stewart v. Brinley*, 902 So. 2d 1, 9 (Ala. 2004).

"The burden is on the party asserting collateral estoppel to prove that the issue it is seeking to bar was determined in the prior adjudication." *Lee L. Saad Constr. Co. v. DPF Architects, P.C.*, 851 So. 2d 507, 520 (Ala. 2002).  If all four elements are present, "the prior judgment is conclusive as to those issues actually determined in the prior suit." *Campbell v. Campbell*, 561 So. 2d 1060, 1061 (Ala. 1990) (quotation marks and citations omitted).

Ms. Sibille argues that she has demonstrated all four elements. Counterclaim Plaintiffs contend otherwise, focusing their arguments on the second and third elements.  Each element is addressed below.

## A.   <u>Whether the Issues Are Identical (First Element)</u>

A comparison of the State Court Action with the present action reveals a common issue directly relevant to the pending motion for summary judgment. During the State Court Action, the defendants raised the issue of whether Ms. Sibille's signature on the warranty deed is a forgery in their summary judgment briefing, at trial, and in a post-trial motion.  Counterclaim Plaintiffs reassert the same issue in their answer and counterclaims in this litigation.  Because the same issue arises in both this action and the State Court Action, Ms. Sibille has satisfied the first element of collateral estoppel.

**B.      Whether the Issue Was Actually Litigated and Necessary to the Judgment (Second and Third Elements)**

The discussion turns to the second and third elements.[5]  As to the second element, an issue is "actually litigated" when it "is properly raised, by the pleadings or otherwise, and is submitted for determination, and is determined."[6] Restatement (Second) of Judgments, § 27 cmt. d.  "Only issues actually decided in a former action are subject to collateral estoppel."  *Leverette ex rel. Gilmore v. Leverette*, 479 So. 2d 1229, 1237 (Ala. 1985).   An issue may be "actually decided," either "expressly or by necessary implication in the first case."  *Joiner v. State*, 500 So. 2d 81, 82 (Ala. Cr. App. 1986), *disavowed on other grounds in Hall v. State*, 521 So. 2d 1373 (Ala. Cr. App. 1988); *see also Wheeler v. First Ala. Bank of Birmingham*, 364 So. 2d 1190, 1200 (Ala. 1978) (An issue is actually litigated where resolution of the issue "is obviously implied from the holding of the

---

[5] As sometimes is the case, in this action, whether the issue was actually decided (second element) is inextricably intertwined with whether the issue was necessary to the judgment in the State Court Action (third element).  18 Wright, Miller, & Cooper, Federal Practice and Procedure § 4421, at 545 (2d ed. 2002) ("The necessity principle may become mingled with the requirements of actual litigation and actual decision" for purposes of the collateral-estoppel analysis).  Hence, these components of collateral estoppel are addressed together in Part IV.B.

[6] As to the third element's requirement that the court had competent jurisdiction, no argument has been made that the Circuit Court of Lee County did not have subject-matter jurisdiction over the action, or is not a court of competent jurisdiction for other reasons.  *See Lloyd Noland Found., Inc.*, 979 So. 2d at 795 ("[F]or purposes of res judicata, the prior judgment must be rendered by a court of competent jurisdiction.  A court of competent jurisdiction is a court with jurisdiction over the subject matter."); *see also Stroeker v. Harold*, 111 So. 3d 138 147–48 (Ala. Civ. App. 2012) (noting that an "essential element" of both res judicata and collateral estoppel "is that the claim or issue has been or could have been decided in a prior action by *a court of competent jurisdiction*" (emphasis added)).

14

court."). For purposes of the third element of collateral estoppel, "[a] determination ranks as necessary or essential only when the final outcome hinges on it." *Bobby v. Bies*, 556 U.S. 825, 835 (2009) (citing 18 Wright, Miller, & Cooper, Federal Practice and Procedure § 4421, at 543 (2d ed. 2002)).  On the other hand, "[i]f issues are determined but the judgment is not dependent upon the determinations, relitigation of those issues in a subsequent action between the parties is not precluded."  Restatement (Second) of Judgments, § 27 cmt. h.

Based on the forgoing principles, Ms. Sibille must demonstrate first, that the defendants in the State Court Action properly raised the issue of the allegedly forged warranty deed, second, that the State Court Action actually decided the issue in Ms. Sibille's favor, and third, that the issue was necessary to the state court judgment.

### 1.     *Whether the Issue Was Properly Raised*

Ms. Sibille contends that the defendants in the State Court Action properly raised the issue of whether her signature on the warranty deed is a forgery.  She points to the defendants' briefing in response to her summary judgment motions, to the extensive arguments of counsel during the bench trial, and to the defendants' post-trial motion.  Counterclaim Plaintiffs contend, however, that the defendants in the State Court Action did not properly raise the issue because they did not assert forgery as an affirmative defense to the breach-of-contract claim.

Counterclaim Plaintiffs are correct that the defendants in the State Court Action did not raise forgery as an affirmative defense in their answers.  Ms. Sibille would be hard pressed to argue now that the defendants in the State Court Action pleaded forgery as an affirmative defense because the word "forgery" appears nowhere in the defendants' pleadings in the State Court Action.  The relevant inquiry, upon which the briefing is scant, is whether Alabama law required the defendants to plead forgery as an affirmative defense.

The parties cite no authority that, under Alabama law, the defendants' reliance on forgery in the State Court Action was an affirmative defense.  There is authority from an intermediate Alabama court, however, indicating that Alabama law does not require a defendant to plead forgery as an affirmative defense to a breach-of-contract claim.  *See Sherman Int'l Corp. v. Summit Gen. Contractors, Inc.*, 848 So. 2d 263 (Ala. Civ. App. 2002).  Elaboration of the facts and holding in *Sherman International* is helpful to show why the decision applies here.

In *Sherman International*, a breach-of-contract action, the Alabama Court of Civil Appeals addressed whether the defendants had to plead as an affirmative defense that their signatures on a guarantee had been forged.  The court observed that "[f]orgery is not one of the affirmative defenses listed in Rule 8(c)" of the Alabama Rules of Civil Procedure and that it had uncovered "no previous Alabama case that specifically state[d] whether forgery is an affirmative defense to a breach-

of-contract claim." 848 So. 3d at 268. It found guidance, however, in Alabama's definition of an affirmative defense: An affirmative defense is "'*new matter* which, assuming the complaint to be true, constitutes a defense to it.'" *Id.* (quoting *Bechtel v. Crown Cent. Petroleum Corp.*, 451 So. 2d 793, 795 (Ala. 1984) (emphasis added)).

The Alabama Court of Civil Appeals explained that the complaint's allegation that the defendants "individually guaranteed the contract cannot be assumed true if [the defendants'] defense is that their signatures to that contract were forged." *Id.* Accordingly, the court held that forgery was "not an affirmative defense because it [was] not external to [the plaintiff's] claims against them." *Id.* at 268. Whether the defendants signed "the contract in question [was] an essential internal element of [the plaintiff's] claim." *Id.* The court concluded, therefore, that the defendants' "general denial of the complaint was sufficient to preserve their opportunity to assert the alleged forgeries at the summary-judgment stage and on appeal." *Id.*

*Sherman International* is not on all fours because the forgery here is that of the opposing party's on the warranty deed that allegedly supplied consideration for the promissory note and guarantee, not the party's signature on the promissory note or guarantee. Nonetheless, *Sherman International*'s principles dictate that the

defendants in the State Court Action did not have to plead forgery as an affirmative defense.

To prevail on a breach-of-contract claim under Alabama law, a plaintiff must show "the existence of a valid contract binding upon the parties in the action." *Armstrong Bus. Servs., Inc. v. AmSouth Bank*, 817 So. 2d 665, 673 (Ala. 2001). A valid contract requires consideration. *See Kelso v. Int'l Wood Prods., Inc.*, 588 So. 2d 877, 878 (Ala. 1991) ("It is a well-settled general rule that consideration is an essential element of, and is necessary to the enforceability or validity of, a contract."). And "'[c]onsideration must be present when the contract is made.'" *Self v. Slaughter*, 16 So. 3d 781, 787 (Ala. 2008) (quoting *Fant v. Champion Aviation, Inc.*, 689 So. 2d 32, 37 (Ala. 1997)). However, a forged deed is void from its inception under Alabama law, *see Shefield v. Andrews*, 679 So. 2d 1052, 1054 (Ala. 1996) ("A forged deed is void, and completely ineffectual to pass title." (citation and internal quotation marks omitted)), and, thus, cannot form the consideration for a valid contract.

Here, the consideration for the promissory note and the guarantee was the warranty deed's transfer of clear title to the 145 acres. If Ms. Sibille forged the warranty deed, as the defendants in the State Court Action contended, then the allegations in the State Court Action complaint that Ms. Sibille and the State Court Action defendants entered into valid contracts cannot be assumed true. Forgery

18

goes to an essential element of Ms. Sibille's breach-of-contract action and attacks the legal existence of the contracts from their inception.  Forgery is not a new matter that arose after the contracts' formation that now permits the defendants to avoid the contracts.  Consequently, whether Ms. Sibille forged the warranty deed "is an essential internal element" of her breach-of-contract claim.  *Sherman Int'l*, 848 So. 2d at 268.  Absent the parties' citation to contrary authority or argument that materially distinguishes *Sherman International*, the court finds that, under Alabama law, the State Court Action defendants did not have to plead forgery as an affirmative defense.  It was properly placed in issue by a general denial. Accordingly, based on this record, the court finds that the defendants properly raised the issue of Ms. Sibille's alleged forgery of the warranty deed in the State Court Action.

### 2.   *Whether the Issue Was Actually Decided and Necessary to the Judgment*

The parties have not pointed to any Order evidencing an express written or oral ruling in the State Court Action on the issue of whether Ms. Sibille's signature on the warranty deed is a forgery.[7]   Nonetheless, the circuit court impliedly

---

[7] The circuit court's written judgment did not contain analysis.  Additionally, the trial transcript reveals no express oral ruling – one way or the other – on the issue of whether the warranty deed contained Ms. Sibille's forged signature.

resolved the issue in Ms. Sibille's favor, and resolution of the issue was necessary to support the judgment.

To reach the judgment in the State Court Action that the defendants were "liable to [Ms. Sibille] pursuant to the subject Promissory Note and Guaranty" (Judgment, at 1), the circuit court necessarily concluded that Ms. Sibille had satisfied each element of her breach-of-contract claims, including the existence of a valid contract.  As discussed earlier, if the circuit court had found that Ms. Sibille's signature on the warranty deed had been forged, then under Alabama law, the deed would have been void, *see Sheffield*, 679 So. 2d at 1054, and there would have been no consideration for the promissory note and guarantee at the time those contracts allegedly were made and, thus, no valid contracts.  It must be presumed, therefore, that the circuit court rejected the State Court Action defendants' argument that the warranty deed was forged, and that the circuit court necessarily found the existence of valid contracts supported by adequate consideration.

That the circuit court actually decided the issue "is obviously implied from the holding of the court," *Wheeler*, 364 So. 2d at 1200, and, for the same reason, the "final outcome hinge[s]" on resolution of the issue, *Bobby*, 556 U.S. at 835. Accordingly, by the process of reasonable inference, the circuit court impliedly resolved the issue of the allegedly forged warranty deed in Ms. Sibille's favor, and

it was necessary for the circuit court to resolve that issue against the defendants in order to find in favor of Ms. Sibille.

Counterclaim Plaintiffs argue, however, that the issue was not actually litigated or necessary to the resolution of the State Court Action because the circuit court "heard no testimony" and did not "receive[ ] any evidence concerning the deed forgery," but instead heard "only a mere passing argument from defense counsel." (Doc. # 78, at 7.) But the circuit court record from the State Court Action refutes this argument. To summarize, one of the principal arguments the defendants raised in the summary judgment briefing was the alleged forgery of the warranty deed. (*See* Resp. to Summ. J. Mot., at 4 n.4, 6, 10; *see also* Resp. to Renewed Summ. J. Mot., at 4–5.) Then, at the beginning of the bench trial, the circuit court entertained extensive arguments on Ms. Sibille's motion *in limine* for outright exclusion of evidence concerning the authenticity of Ms. Sibille's signature on the warranty deed and on defense arguments that the authenticity of Ms. Sibille's signature was central to their defense. The circuit court also acknowledged its familiarity with the issue of the validity of the signature on the warranty deed from the summary judgment proceedings. (Trial Tr., at 10–11.) It then denied Ms. Sibille's motion *in limine*, subject to Ms. Sibille's right to renew her objections during the course of the trial. Defense counsel reasserted the issue of the allegedly forged warranty deed during the first witness's testimony (*see*

21

Trial Tr., at 65–68) and objected to the warranty deed's admission to the extent that Ms. Sibille was offering the warranty deed to prove that she had executed it (Trial Tr., at 61–63). The circuit court also admitted probative evidence on this issue, and the parties point to no salient evidence offered during the trial on the forgery issue that the trial court excluded. A certified copy of the warranty deed itself was in evidence, as well as at least five documents containing signatures purporting to be Ms. Sibille's and exemplars of Ms. Sibille's mother's signature obtained during the trial.[8] Additionally, the defendants' post-trial motion focused principally on the issue of the suspected forged deed.

Based upon a careful review of the record from the State Court Action, the court finds that the arguments on the issue of the authenticity of the deed's signature were not merely made in passing, but that the parties actually litigated the issue of the forged deed, that the circuit court actually decided the issue, and that resolution of the issue was necessary to the judgment. Accordingly, Ms. Sibille satisfies the second and third elements of collateral estoppel.

## C.   **Whether There is an Identity of Parties (Fourth Element)**

Alabama courts adhere to the doctrine of mutuality of estoppel. *See Jones v. Blanton*, 644 So. 2d 882, 886 (Ala. 1994) ("Although many courts, including the

---

[8] In the State Court Action, the defendants asserted their suspicion that Ms. Sibille's mother had forged the signature on the warranty deed. (*See, e.g.*, Post-Trial Motion for Release of Original Court Documents (Doc. # 72-7 ("Defendants contend that Plaintiff's signature on the Deed was forged by her mother, Camellia Rice, or another female.").)

Federal courts, have dispensed with the mutuality requirement, it remains the law in Alabama."); *see also Jim Parker Bldg. Co., Inc. v. G & S Glass & Supply Co.*, 69 So. 3d 124, 132 (Ala. 2011) (reaffirming the doctrine's applicability).   The doctrine of mutuality of estoppel means that

> collateral estoppel operate[s] only between parties (and their respective privies) who or which have already opposed each other in at least one claim that has been litigated to a judgment.  If neither a party nor any of that party's privies has litigated at least one claim to a judgment against another party nor any of the other party's privies, . . . collateral estoppel can[not] bar either of those parties or any of that party's privies from suing the other party or any of the other's privies.

*Stewart v. Brinley*, 902 So. 2d 1, 9 (Ala. 2004).

The parties to the counterclaims in this litigation are, on one side, Century Park, Mr. Davis, Mrs. Davis, Mr. Allen, and Dr. Stiles and, on the other side, Ms. Sibille.  The parties to the claims in the State Court Action are identical with respect to Mr. Davis, Century Park, Mr. Allen, Dr. Stiles, and Ms. Sibille, and the fourth element is met as to these parties.  Mrs. Davis was not a party, however, in the State Court Action.  Ms. Sibille's argument, which merely is that the parties "are identical" (Doc. # 71, at 7), does not acknowledge Mrs. Davis's different status.  Ms. Sibille presents no argument, therefore, for finding the fourth element satisfied as to Mrs. Davis.   Accordingly, she has not met her burden of demonstrating that she can invoke collateral estoppel against Mrs. Davis.

**D.**   **Counterclaim Plaintiffs' Additional Argument**

Counterclaim Plaintiffs advance a final argument for avoiding the bar of collateral estoppel.  They contend that they now have additional evidence, namely, the *original* warranty deed obtained post-trial and a retained handwriting expert, whose preliminary assessment of forgery they argue could change the outcome of the forged warranty deed issue.  (Doc. # 78, at 3.)  But they cite no authority that the procurement of this evidence on an issue in existence prior to and essential to the State Court Action judgment defeats the bar of collateral estoppel, and the court located no Alabama law directly on point.  As explained in an authoritative treatise, however,

> [n]ewly discovered evidence may bear either upon a fact situation in existence at the time the former judgment was rendered, or upon a fact situation which thereafter has come into existence.  Where the fact situation was in existence at the time the judgment was rendered, the case is clearly within the rule stated in this annotation . . . , and res judicata applies.
>
> . . .
>
> The rule that the discovery of new evidence does not affect the doctrine of res judicata also applies where a judgment is relied upon as precluding, by way of collateral estoppel, the litigation of an issue essential to, and litigated and determined by, the former judgment.

*Comment Note, Res Judicata as Affected by Newly Discovered Evidence After Judgment*, 149 A.L.R. 1195 (2011); *see also McLellan v. Columbus I-70 West Auto-Truckstop, Inc.*, 525 F. Supp. 1233, 1235 (N.D. Ill. 1981) (observing that, under Illinois law, "[a] party against whom collateral estoppel is asserted has the

burden of demonstrating that newly discovered evidence was essential to a proper decision in the prior action and that he was in no way responsible for the lack of such evidence in the prior action.").

Against the foregoing general principles, there are at least two problems with Counterclaim Plaintiffs' argument.  First, they have not shown that the evidence upon which they rely is newly discovered, rather than just new.  *See generally Wal-Mart Stores, Inc. v. Pitts*, 900 So. 2d 1240, 1245 (Ala. Civ. App. 2004) (explaining that "newly discovered evidence" is evidence "which by due diligence could not have been discovered in time to move for a new trial" and that "[n]ewly discovered evidence means evidence in existence at the time of trial of which the movant was unaware." (citations and internal quotation marks omitted)). In the State Court Action, the issue of the warranty deed's alleged forgery squarely was at issue, and the circuit court admitted a certified copy of the warranty deed during the trial.  The Counterclaim Plaintiffs do not contend, for obvious reasons, that they were unaware at the time of the trial that an *original* warranty deed existed.  They also present no argument as to why, with the exercise of due diligence, they could not have obtained the original warranty deed or a handwriting expert for use during the trial proceedings in the State Court Action.  Moreover, the defendants in the State Court Action made a similar argument to the circuit court in a post-trial motion to reopen the record to permit further evidence on the

issue of the allegedly forged deed, and in particular, advised the circuit court about their recent retention of a handwriting expert.  The circuit court denied that request, and notably, the Alabama Supreme Court left that ruling undisturbed.   While understandably the Counterclaim Plaintiffs are displeased with the circuit court's adverse ruling on their "new evidence" argument (Doc. # 72-8), they present no grounds for why they should get the proverbial second bite at the apple to argue again in this litigation the issue of the warranty deed's alleged forgery.

Second, and relatedly, the situation upon which Counterclaim Plaintiffs now rely, namely, their suspicion that the signature on the warranty deed is a forgery, existed at the time the circuit court entered its judgment, was litigated, and was essential to the State Court Action judgment.   Application of collateral estoppel, therefore, remains in play.   Accordingly, the court finds that the Counterclaim Plaintiffs' unearthing of additional (but not newly discovered) evidence does not defeat the preclusive effect of collateral estoppel.

## V.  CONCLUSION

"The doctrine of collateral estoppel . . . serves to promote the efficient allocation of [courts'] limited judicial resources, by preventing the unnecessary and pointless relitigation of issues previously adjudicated." *Jones v. Blanton*, 644 So. 2d 882, 885 (Ala. 1994) (internal footnote omitted).  It also promotes the finality of judgments.  Ms. Sibille has demonstrated each element of collateral estoppel as to

Century Park, Mr. Davis, Mr. Allen, and Dr. Stiles, and, therefore, relitigation of the issue of the allegedly forged warranty deed between Ms. Sibille and these defendants is unnecessary and pointless.  These four Counterclaim Plaintiffs are collaterally estopped from arguing that Ms. Sibille's signature on the warranty deed is a forgery, and summary judgment on the counterclaims, which hinge upon a contrary finding, is warranted.  Ms. Sibille has not shown, however, that the doctrine of collateral estoppel bars Mrs. Davis, who was not a party to the State Court Action, from relitigating the issue of the allegedly forged warranty deed.

Accordingly, it is ORDERED that Ms. Sibille's motion for summary judgment (Doc. # 70) is GRANTED on grounds of collateral estoppel and that the counterclaims brought by Century Park, LLC, T. K. Davis III, Donald H. Allen, and Warren A. Stiles are DISMISSED with prejudice.

It is further ORDERED that Ms. Sibille's motion for summary judgment (Doc. # 70) is DENIED as to the counterclaims brought by Patricia Y. Davis.

DONE this 13th day of January, 2015.

_____/s/ W. Keith Watkins_____
CHIEF UNITED STATES DISTRICT JUDGE